# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
### DAVENPORT DIVISION

| | | |
|---|---|---|
| NEW COVENANT FULL GOSPEL BAPTIST CHURCH OF MUSCATINE, | * * * * | CIVIL NO. 3:10-CV-00047-RP-TJS |
| Plaintiff, | * * | |
| v. | * * | **REPORT AND RECOMMENDATION** |
| CITY OF MUSCATINE, | * * | |
| Defendant. | * | |

## I.  INTRODUCTION

This action was initiated on April 12, 2010, when counsel for New Covenant Full Gospel Baptist Church of Muscatine ("New Covenant"), a non-profit corporation, filed a Complaint (Document No. 1) under 42 U.S.C. § 1983  against the City of Muscatine ("City").  New Covenant claims the City deprived it of its property without due process of law by posting the property as "No Occupancy"without authority to do so under the City's Code and without providing New Covenant notice and an opportunity for a full and fair hearing. (*Id.* ¶ 17.)  Due to repeated withdrawals of counsel for New Covenant, and significant delays in the discovery process, this case is no closer to reaching the merits of those claims now than as of the date the Complaint was filed.

This Report and Recommendation is made pursuant to the Text Order (Document No. 53) entered by United States District Court Senior Judge Robert W. Pratt on July 20, 2012. Pending in this case is Defendant's Renewed Motion to Dismiss (Document No. 24) filed on

November 17, 2011. The City seeks dismissal of the case in its entirety due to New Covenant's failure to timely produce discovery and failure to comply with court orders compelling discovery.

Also pending are recently filed Motions to Withdraw as Counsel for Plaintiff (Document Nos. 55, 57 & 58) filed by New Covenant's current attorneys on August 3, 7 & 8, 2012.

A hearing on those matters was held on August 15, 2012. For the reasons which follow, it is recommended that this case be dismissed without prejudice and counsel be allowed to withdraw.

## II. REPORT

A Trial and Scheduling Order (Document No. 9) was entered on June 18, 2010, setting this case for trial before a jury on January 17, 2012. (*Id.* ¶ 1.) The parties were to complete discovery by July 1, 2011. (*Id.* ¶ 7.)

On June 29, 2010, within 3 months of bringing the action, the attorney who initially filed the Complaint on behalf of New Covenant, Harley Erbe, filed a Motion for Leave to Withdraw as Plaintiff's Counsel (Document No. 10). Mr. Erbe indicated that Pastor Howard Hughes was his sole contact in representing New Covenant and set forth several reasons for his requested withdrawal. (*Id.* ¶ 2.) First, Mr. Erbe stated that "[a] rift ha[d] developed between [counsel] and Plaintiff to the point that counsel will only communicate in writing with Plaintiff to ensure that there are no misunderstandings." (*Id.* ¶ 3.) Counsel also indicated Pastor Hughes had "expressed dissatisfaction" with counsel and that a series of acts

by Pastor Hughes had hindered his representation of New Covenant. (*Id.* ¶¶ 4-5.) Mr. Erbe provided the following example:

> With Pastor Hughes's consent, [counsel] invested time and effort in planning and scheduling for the interior inspection [of the church property] through joint discussions with Defendant's representatives. In reliance on the scheduled interior inspection, Defendant made arrangements for the attendance of various professionals and contractors. But Pastor Hughes revoked Plaintiff's authorization for the interior inspection immediately before it was to occur, so everyone's work in that regard, including [counsel's], was wasted.

(*Id.* ¶ 5.) Mr. Erbe also stated that Pastor Hughes had accepted advice from an unidentified third party and had "refused to cooperate with the prosecution of the action . . ., for example by not assisting with preparing responses to Defendant's discovery requests." (*Id.* ¶¶ 6-7.) Finally, Mr. Erbe expressed concern that, if he remained in the case, "Pastor Hughes will insist that counsel act in a manner that will result in a violation of the Iowa Rules of Professional Conduct or other law." (*Id.* ¶ 9.)

Pursuant to Local Rule 83.1(d)(5), this magistrate judge found sufficient good cause existed to allow the withdrawal of Mr. Erbe, which would be granted after new counsel entered an appearance. (*See* Order (Document No. 11).) Attorney Robert A. Wright, Jr. filed an Appearance (Document No. 17) on behalf of New Covenant on October 15, 2010.

Nearly a year later, after no other activity on the docket, the City filed a Motion to Compel Disclosures, Discovery Responses and for Sanctions, Including Dismissal of Action (Document No. 19) on October 10, 2011. The City indicated that New Covenant had not timely served its initial disclosures or responded to interrogatories and requests for production of documents, served on February 14, 2011, despite repeated inquiries by counsel. The City requested an order dismissing the action and for other sanctions or, in the

alternative, an order compelling New Covenant to provide its initial disclosures and discovery responses.

New Covenant did not file a response to the motion within the allowed time period. Consequently, on November 1, 2011, this magistrate judge ordered New Covenant to provide the City with its initial disclosures and complete answers and responsive documents to the discovery requests by no later than November 14, 2011. (Order (Document No. 21).) Mr. Wright was ordered to submit a report to the court, on the same date, confirming the initial disclosures and discovery responses were served upon the City. (*Id.* at 1-2.) Counsel was also ordered to show cause as to why sanctions should not be imposed for the failure to timely produce the discovery or respond to the motion to compel. (*Id.* at 2.) It was also noted that the failure to obey the order and respond to the discovery requests might result in the imposition of sanctions and/or a recommendation for dismissal of this action under Federal Rule of Civil Procedure 37(b) & (d). (*Id.*) Mr. Wright failed to file the report by November 14th as ordered.

On November 15, 2011, the City filed an initial Motion to Dismiss (Document No. 22) which was stricken by the court because the City failed to file a supporting brief as required by Local Rule. (Text Order (Document No. 23).) The City filed a Renewed Motion to Dismiss (Document No. 24) on November 17, 2011, with a supporting Brief (Document No. 24-1) and an Itemized Summary of Attorney's Fees and Expenses (Document No. 24-2). The City asks for the dismissal of the case in its entirety pursuant to Rule 37(b) & (d), along with an award of attorney's fees and expenses, because New Covenant failed to respond to the discovery requests and ignored both the City's attempts to obtain the discovery and the

court's Order requiring the discovery be produced, and counsel's report be filed, by November 14, 2011. The City's summary of attorney's fees associated with the motion to compel and renewed motion to dismiss amounted to 10.7 hours at $125.00 per hour for a total of $1,337.50. (*See* Document No. 24-2.)

Mr. Wright filed a Resistance (Document No. 25) to the Renewed Motion to Dismiss on behalf of New Covenant on December 5, 2011. Mr. Wright admitted that no response was filed to the motion to compel, but explained, incorrectly, that he "had not yet entered his appearance" at the time the motion was filed on October 10, 2011, and was unaware the motion had been filed. (*Id.* ¶¶ 1, 2.) As later conceded by Mr. Wright, he had in fact entered his Appearance (Document No. 17) on October 15, 2010, nearly a year prior to the filing of the motion to compel. Mr. Wright also stated in his Resistance that "Plaintiff provided the Defendant with its Initial Disclosures and has since provided responses to Defendant's Discovery." (*Id.* ¶ 5.) Mr. Wright requested additional time to file a brief in support of the Resistance and asked that the court to "consider other sanctions short of dismissal." (*Id.* ¶ 6.)

The City filed a Reply (Document No. 26) on December 6, 2011, pointing out that Mr. Wright had falsely indicated that he had not entered an appearance at the time the motion to compel was filed and noting communications and correspondence had been exchanged between the City's counsel and Mr. Wright regarding the delinquent discovery responses and initial disclosures prior to the motion. (*Id.* ¶¶ 1-2.) The City also noted that Mr. Wright had filed a lawsuit on behalf of New Covenant on June 8, 2011, in Iowa District Court claiming a Tax Deed executed on the same property was invalid. (*Id.* ¶ 4; *see* Ex. A to Reply.)

According to the City, initial disclosures were produced by New Covenant on November 17, 2011, but were lacking a computation of damages, and a response to the request for documents, consisting of 109 pages, was provided on December 5, 2011. (*Id.* ¶¶ 5-6, 9.) The City also received, on December 6, 2011, interrogatory answers which were not signed by the designated individuals, Pastors Howard and Carol Hughes. (*Id.* ¶ 10.) The City resisted New Covenant's request for additional time to file a brief and reasserted its request for dismissal of the action "given the blatant misrepresentations," the "complete disregard" of the court's Order, and the "extremely late production of discovery responses." (*Id.* ¶ 13.)

Mr. Wright filed an Amendment (Document No. 27) to the Resistance on December 12, 2011, wherein he admitted the inaccuracy of his representation which he explained was "due to miscommunication between counsel and staff." (*Id.* ¶ 2.) He attributed the delay in responding to the City's discovery responses to "a major health problem" and various work-related matters. (*Id.* ¶¶ 3-7.) Mr. Wright suggested "the sanction of payment of attorney fees would be appropriate due to excusable neglect but not dismissal of Plaintiff's lawsuit." (*Id.* ¶ 8.)

In a Reply (Document No. 28) filed December 15, 2011, the City indicated New Covenant had yet to supplement its initial disclosures with damage computations or provide signatures for the interrogatory answers. (*Id.* ¶¶ 3-4.) The City also indicated that two interrogatories were not answered. (*Id.* ¶ 5.)

This magistrate judge conducted a telephonic status conference with counsel on December 19, 2011, and, given the state of discovery and the pending renewed motion to dismiss, continued the January 2012 trial date. (Order (Document No. 31).) The parties were

directed to proceed with completion of any outstanding discovery. (*Id.* at 2.) After a telephonic status conference on January 26, 2012, the court reset the trial date for August 27, 2012, extended the time to complete discovery to March 10, 2012, and allowed New Covenant until March 20, 2012, to file any additional resistance to the renewed motion to dismiss. (Order (Document No. 33) at 1-2.) New Covenant was directed to serve the City with a full and complete set of verified answers to interrogatories. (*Id.* at 1.)

A few days after the conference, on February 2, 2012, Mr. Wright filed an Application to Withdraw (Document No. 34) stating that a conflict had arisen between himself and New Covenant. The City, in Response (Document No. 36), noted that New Covenant had failed to produce a complete set of verified interrogatory answers as ordered, and urged the court to dismiss the case instead of allowing the withdrawal of counsel.

A few weeks later, Mr. Wright filed a Motion (Document No. 37) to extend the discovery deadline until April 13, 2012, due to the pending application to withdraw. (*Id.* ¶¶ 4-7.) Mr. Wright also stated that the City sought to take discovery depositions the week of February 27, 2012, during which he had scheduling conflicts. (*Id.* ¶¶ 3-4.) As explained in its Response (Document No. 38), the City served notice of the depositions of Pastors Howard and Carol Hughes, and other New Covenant representatives, members and witnesses for February 28 through March 1, 2012, after counsel did not receive a response from Mr. Wright in regard to scheduling the depositions. (*Id.* ¶ 9.) The individuals were served with subpoenas except for Pastors Howard and Carol Hughes and one other person, who were not located by the sheriff at the addresses provided in the interrogatory answers. (*Id.* ¶¶ 10-11.)

The City objected to Mr. Wright's subsequent request to postpone the depositions which it viewed as untimely and inappropriate given the history of the case. (*Id.* ¶¶ 12-13, 16.)

In a Supplemental Response (Document No. 40), the City indicates the depositions of Pastors Howard and Carol Hughes were commenced on February 28, 2012, after a significant delay waiting for the arrival of Mr. Wright. The City notes that New Covenant still failed to provide complete verified interrogatory answers during the course of the depositions. (*Id.* ¶ 2.) The City also states that both pastors "refused to answer questions regarding the average attendance at Sunday church services at New Covenant . . . during the time periods at issue in this case." (*Id.* ¶ 3.)

During his deposition, Howard Hughes acknowledged he had "worked on the answers to the interrogatories" which were produced to the City in December 2011 and had not signed a verification page. (Howard Hughes Dep. Tr. (Ex. A to Document No. 49) pp. 5-6.) When asked to explain why he had not signed, Pastor Hughes noted there were "some things that apparently were stated wrong" and he needed to make sure the answers contained "an accurate representation." (*Id.* pp. 6-9.) Pastor Hughes indicated he would "be glad" to make any corrections needed after the deposition. (*Id.* p. 9.)

As for questions related to the average attendance at the church, Howard Hughes did not provide an actual number despite repeated attempts by counsel. (*Id.* pp. 101-05.) Carol Hughes also refused to answer similar questions about the church's attendance. (Carol Hughes Dep. Tr. (Ex. D to Document No. 49) pp. 7-8.)

A hearing was held on March 13, 2012, at which both Mr. Wright and Pastor Howard Hughes appeared and made statements to the court. (*See* Hr'g Tr. (Document No. 43).) This

magistrate judge subsequently granted Mr. Wright's application to withdraw as counsel and directed New Covenant to have new counsel enter an appearance on its behalf no later than April 30, 2012. (Order (Document No. 44).) As explained in the Order, it was clear from the statements of Mr. Wright and Pastor Hughes that there had been a breakdown in the attorney-client relationship, which appeared to be irreconcilable. (*Id.* at 2.) Neither Mr. Wright nor Pastor Hughes offered any assurances to this judge that their relationship could continue amicably and productively. (*Id.*) Summarizing their statements as follows, this judge found sufficient cause, under Local Rule 83.1(d)(5), for allowing Mr. Wright to withdraw his representation of New Covenant:

> Mr. Wright indicated there had been a recent breakdown in communications with Pastor Hughes related to discovery and noted there have been "some disagreements" and "ongoing conflict regarding strategy." (Hrg. Tr. at 3-4.) Mr. Wright also noted Pastor Hughes indicated he had spoken "with another counsel," which Mr. Wright described as "concerning" to him. (Hrg. Tr. at 3.) Mr. Wright expressed "being quite concerned and not sleeping well over the issues." (Hrg. Tr. at 3-4.)
>
> In turn, Pastor Hughes expressed concern as to the adequacy of Mr. Wright's representation of New Covenant, including a lack of communication and the failure to meet with New Covenant representatives regarding recent subpoenas of witnesses and the taking of their depositions. (Hrg. Tr. at 8.) According to Pastor Hughes, Mr. Wright "just simply did not want to put forth an effort to represent the church, and the history of him not doing this is very long." (Hrg. Tr. at 8-9.) Pastor Hughes expressed a desire to present details related to "a number" of problems with Mr. Wright's representation but the court warned Pastor Hughes of potential attorney-client privilege issues in discussing those matters on the record. (Hrg. Tr. at 9.)
>
> Pastor Hughes also disputed any presumption that New Covenant representatives were being difficult or that they had failed to provide information in a timely fashion to Mr. Wright. (Hrg. Tr. at 10, 14, 22.) In Pastor Hughes' opinion, they "have been a good client." (Hrg. Tr. at 14.) Pastor Hughes suggested a personal or health problem with Mr. Wright may be the real reason for his withdrawal as counsel and, if so, the court "needs to make due notice" that is the reason "and not an issue between him and the church." (Hrg. Tr. at 14, 15, 22.)

Mr. Wright disagreed that there was a physical health problem at issue. (Hrg. Tr. at 15-16.) In his opinion, Pastor Hughes acknowledges "there's a lot of conflicts, but he just doesn't want to admit that there's a conflict that would prevent us from moving forward mutually in this matter." (Hrg. Tr. at 16.)

Although they present different views, under the circumstances as described by either Mr. Wright or Pastor Hughes, there is certainly sufficient cause to allow the requested withdrawal of counsel, regardless of whoever is at fault for any lack of communication, relationship difficulties or shortcomings in the discovery process. Problems between client and counsel clearly exist and, in this court's opinion, prevent New Covenant from appropriately moving forward in this litigation.

(*Id.* pp. 3-4.) In light of the discovery delays and shortcomings, and the withdrawals by two

attorneys, this magistrate judge emphasized that

[n]otwithstanding Pastor Hughes' statements to this court disputing the assertions of counsel, it is ultimately the responsibility of New Covenant, as the party who initiated this action, to prosecute its claims by fully participating in discovery, and complying with court rules and orders. It is also the responsibility of New Covenant to retain its own legal representation, maintain appropriate communication with counsel, and cooperate with counsel's representation in this matter so its responsibilities can be fulfilled. Whether it be Pastor Hughes, or other representatives of New Covenant, those responsibilities must be met without further delay for this action to move forward.

(*Id.* p. 5.) This magistrate judge also, "with great reluctance," vacated the trial date and any

other remaining scheduling deadlines, stating as follows:

Due to the breakdown in New Covenant's attorney-client relationship, and the repeated delay in the discovery process, this case is not prepared to move forward in any manner until New Covenant's representation is finally settled. The court will conduct a Scheduling Conference to reset deadlines and the trial date after new counsel has entered an appearance on behalf of New Covenant.

The court emphasizes, however, that it will not allow any further delay in this litigation due to problems with New Covenant retaining legal representation. New Covenant must abide by the deadline set forth below to have new counsel enter an appearance, or this magistrate judge may recommend dismissal of the case for failure to prosecute and comply with this order pursuant to Federal Rule of Civil Procedure 41(b). *The court considers*

*this the last opportunity for New Covenant to resolve its repeated issues with legal representation in this matter.*

(*Id.* pp. 5-6 (emphasis added).)

On April 24, 2012, attorney Tomas J. Rodriquez, of Puryear Law P.C., entered an Appearance (Document No. 46) on behalf of New Covenant, and subsequently filed a Response to Defendant's Renewed Motion to Dismiss (Document No. 48). Mr. Rodriquez asserts that the case should not be dismissed because "any failure of [New Covenant] to comply with the" Order of November 1, 2011, "was not due to Plaintiff's willfulness, fault, or bad faith." (*Id.* ¶¶ 9-10.) Noting Mr. Wright's failures to submit timely responses and to appear timely at the depositions, Mr. Rodriquez suggests that "the Court should not impose any sanctions upon the Plaintiff due to its good faith efforts and because its failure to comply with the Court Order was very likely the sole fault of its former counsel." (*Id.* ¶¶ 9-13.)

In Reply (Document No. 49), the City notes that New Covenant is now represented by its fourth attorney, (another attorney represented New Covenant prior to the filing of the Complaint), and argues the record "establishes a pattern of uncooperation by Plaintiff, through its Pastor, Howard Hughes, in complying with the Court's orders regarding discovery." (*Id.* ¶¶ 1-2.) According to the City, New Covenant still has not provided complete verified interrogatory answers as ordered by the court. (*Id.* ¶ 3.) The City also points out that, in addition to the incorrect addresses provided in the unverified answers, two individuals who were identified as witnesses testified they had no knowledge of any facts pertinent to the lawsuit. (*Id.* ¶¶ 4-5.) The City further notes the refusal of both pastors to answer questions during their depositions regarding attendance at church services. (*Id.* ¶ 6.)

With permission of the court, Mr. Rodriquez filed a Supplement to Plaintiff's Response (Document No. 51) on June 1, 2012, indicating he was attempting to recover the file from Mr. Wright and reasserting that New Covenant "and its representatives have put forth a good faith effort to comply with all discovery deadlines and other requirements." (*Id.* ¶ 3.) Attorney Eric D. Puryear subsequently entered an Appearance (Document No. 52) on behalf of New Covenant on July 5, 2012.

Upon the referral to this magistrate judge, a hearing on the Renewed Motion to Dismiss was set for August 15, 2012. (*See* Text Order (Document No. 54).) Prior to the hearing, a Motion to Withdraw as Counsel for Plaintiff (Document No. 55) was filed, on August 3, 2012, by Mr. Puryear, wherein he states that New Covenant "has not made payments of legal fees according to the terms of [their] engagement, making continued representation impractical." (*Id.* ¶ 3.)

Mr. Puryear filed a Supplemental Motion to Withdraw as Counsel for Plaintiff (Document No. 57) on August 7, 2012, stating that since the filing of his previous motion "a conflict has arisen between the Plaintiff and Plaintiff's counsel, such that irreconcilable differences have caused an irretrievable breakdown of the attorney-client relationship and making continued representation of the Plaintiff by Puryear Law, P.C. impractical." (*Id.* ¶ 4.) The following day, August 8, 2012, Mr. Rodriquez filed a Motion to Withdraw as Counsel for Plaintiff (Document No. 58) indicating he was no longer employed by Puryear Law P.C.

A hearing was held on August 15, 2012, on the Renewed Motion to Dismiss and the Motions to Withdraw as Counsel. Mr. Puryear, Pastors Howard and Carol Hughes, and counsel for the City appeared at the hearing. Mr. Puryear argued that, if any sanction was

imposed for a discovery violation, the appropriate sanction would be an amount of money not the dismissal of New Covenant's case. (Hr'g Tr. (Document No. 60) pp. 5-6.)  Both Howard and Carol Hughes were allowed to make statements to the court, which are incorporated herein by reference. (*See id.* pp. 7-25.)  Both pastors repeatedly and, in this judge's opinion, passionately, asserted that the church's property was "stolen" by the City and alleged race discrimination. (*Id.*)  The pastors also vehemently denied that there was a conflict between themselves and Mr. Puryear. (*Id.* pp. 12-15, 22-23.)  Howard Hughes indicated he did not "have a problem with [Mr. Puryear] declining to represent the church," but insisted counsel identify the nature of the conflict on the record. (*Id.*)  The City's counsel indicated that complete interrogatory answers still had not been produced by New Covenant. (*Id.* p. 3.)

As directed by this magistrate judge, the City filed, on August 21, 2012, an Updated and Supplemented Itemized Summary of Attorney's Fees and Expenses Associated With Defendant's Motion to Compel and Motion to Dismiss (Document No. 61).  The summary indicates 54.40 hours of attorney time expended, at $125.00 per hour, for a total of $6,800.00 in attorney's fees, plus an amount of $410.87 for expenses, for a grand total of $7,210.87.

### III.  LEGAL AUTHORITY

Pursuant to Federal Rule of Civil Procedure 37(b), if a party "fails to obey an order to provide or permit discovery . . . the court . . . may issue further just orders" which may include the following:

> (i)     directing that the matters embraced in the order or other designated facts be taken as established for the purposes of the action, as the prevailing party claims;

(ii)   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   striking out pleadings in whole or in part;

(iv)   staying further proceedings until the order is obeyed;

(v)   dismissing the action or proceeding in whole or part;

(vi)   rendering a default judgment against the disobedient party; or

(vii)   treating as a contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

In order to impose sanctions under Rule 37(b), "'there must be an order compelling discovery, a willful violation of that order, and prejudice to the other party.'" *Mems v. City of St. Paul*, 327 F.3d 771, 779 (8th Cir. 2003)(quoting *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999)); *see also Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 899 (8th Cir. 2009).

The court may also order sanctions, under Rule 37(d) if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answer, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A)(ii). Sanctions available under Rule 37(d) include those listed above under Rule 37(b)(2)(A)(i)-(vi) and the

payment of attorney's fees and expenses. Fed. R. Civ. P. 37(d)(3). A direct order as required under Rule 37(b) is not a prerequisite to imposition of sanctions under Rule 37(d). *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 993 (8th Cir. 1975). There must be, however, "a total non-compliance with discovery" for sanctions under Rule 37(d). *Id.* at 995.

The "court is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Carey*, 186 F.3d at 1022. This "'discretion is bounded by the requirement of Rule 37(b)(2) that the sanction be 'just' and relate to the claim at issue'" in the court's order. *Hairston v. Alert Safety Light Prods., Inc.*, 307 F.3d 717, 719 (8th Cir. 2002)(quoting *Avionic Co. v. General Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992)).

Under our system of justice, there is a strong policy in favor of deciding a case on the merits, and against depriving any party of its day in court. *Sentis Group*, 559 F.3d at 899 (quoting *Fox*, 516 F.2d at 996); *Carey*, 186 F.3d at 1020. "'[T]he opportunity to be heard is a litigant's most precious right and should sparingly be denied.'" *Carey*, 186 F.3d at 1020 (quoting *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977)); *see also, e.g., Sentis Group*, 559 F.3d at 899 (quoting *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000)(quoting *Carey*)); *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694 (8th Cir. 2001)(quoting *Carey*). "Dismissal and entry of a default judgment should be the rare judicial act." *Edgar,* 548 F.2d at 773. Consequently, "[t]he court should resort to the sanction of dismissal only when the failure to comply has been due to . . . willfulness, bad faith, or any fault of petitioner." *Hairston*, 307 F.3d at 718-19 (internal quotation marks omitted)(quoting *Edgar,* 548 F.2d at

772 (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958))).[1]

Aside from the sanctions for discovery failures, under Federal Rule of Civil Procedure 41(b) the "court may dismiss with prejudice a cause of action 'for failure of a plaintiff to prosecute or to comply with [the Rules of Civil Procedure] or any court order.'" *Arnold v.*

_____

[1] For examples where the Eighth Circuit affirmed the striking of pleadings and/or entry of default judgment or dismissal of claims, see, e.g., *International Bhd. of Elec. Workers v. Hope Elec. Corp.*, 380 F.3d 1084, 1105-07 (8th Cir. 2004)(default judgment); *Forsythe v. Hales*, 255 F.3d 487, 490-91 (8th Cir. 2001)(default judgment); *Martin*, 251 F.3d at 694-95 (dismissal of plaintiff's claims); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 817-18 (8th Cir. 2001)(dismissal of counterclaim and entry of default judgment); *Keefer v. Provident Life & Accident Ins. Co.*, 238 F.3d 937, 940-41 (8th Cir. 2000)(dismissal of action); *Lindstedt v. City of Granby*, 238 F.3d 933, 936-37 (8th Cir. 2000)(dismissal of complaint); *Schoffstall*, 223 F.3d at 823-24 (dismissal of emotional distress claims); *Carey*, 186 F.3d at 1019-22 (striking pleadings and entry of judgment); *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009-10, 1011-12 (8th Cir. 1993)(default judgment and award of $5,407.50 in attorney's fees); *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992)(dismissal of plaintiff's RICO claims); *Avionic Co.*, 957 F.2d at 557-59 (dismissal of action); *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983)(dismissal of claims); *Cross v. General Motors Corp.*, 721 F.2d 1152, 1155-56 (8th Cir. 1983)(dismissal of action without prejudice); *Lorin Corp. v. Goto & Co.*, 700 F.2d 1202, 1207-08 (8th Cir. 1983)(dismissal of plaintiff's complaint); *Laclede Gas Co. v. G. W. Warnecke Corp.*, 604 F.2d 561, 565-66 (8th Cir. 1979)(dismissal of counterclaim); *Denton v. Mr. Swiss of Missouri, Inc.*, 564 F.2d 236, 240-41 (8th Cir. 1977)(dismissal of action); *Fox*, 516 F.2d at 992-93 (dismissal of complaint); *see also Lawrence v. Bowersox*, 297 F.3d 727, 733-34 (8th Cir. 2002)(affirming award of $8,125 in attorneys' fees and $587.19 in expenses as sanction for violating discovery order; but noting opinion that "the district court was generous in foregoing the option to strike the appellants' pleadings and entering a default judgment"). For examples where the Eighth Circuit reversed the dismissal of actions or striking of pleadings, see, e.g., *Sentis Group*, 559 F.3d at 898-904 (reversing sanction of dismissal with prejudice); *Hairston*, 307 F.3d at 718-20 (reversing dismissal of case with prejudice; distinguishing cases where plaintiffs had numerous opportunities to respond to court orders but repeatedly failed to do so); *Baker v. General Motors Corp.*, 86 F.3d 811, 816-17 (8th Cir. 1996)(reversing the striking of defendant's affirmative defenses), *rev'd on other grounds*, 522 U.S. 222, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998); *Edgar,* 548 F.2d at 772-73 (reversing dismissal of complaint and entry of default judgment on counterclaim).

*ADT Sec. Servs., Inc.*, 627 F.3d 716, 722 (8th Cir. 2010)(quoting Fed. R. Civ. P. 41(b); affirming dismissal of plaintiffs' claims with prejudice for failing to comply with order); *see also Doe v. Cassel*, 403 F.3d 986, 989-90 (8th Cir. 2005)(affirming dismissal of third amended complaint with prejudice for failure to comply with orders); *Good Stewardship Christian Ctr. v. Empire Bank*, 341 F.3d 794, 797-98 (8th Cir. 2003)(affirming dismissal with prejudice for inappropriate ex parte communication made in direct violation of court order, numerous baseless motions, failure to properly answer discovery, and obstructing discovery during depositions); *Hutchins v. A.G. Edwards & Sons, Inc.*, 116 F.3d 1256, 1259-60 (8th Cir. 1997)(affirming dismissal with prejudice where plaintiffs persistently refused to answer interrogatories properly or pay sanctions as ordered by court); *Aziz v. Wright*, 34 F.3d 587, 589 (8th Cir. 1994)(affirming dismissal of complaint for failure to comply with court order).

Dismissal with prejudice under Rule 41(b) is viewed as "'an extreme sanction and should be used only in cases of wilful disobedience of a court order or . . . persistent failure to prosecute a complaint.'" *Rodgers v. Curators of the Univ. of Missouri*, 135 F.3d 1216, 1219 (8th Cir. 1998)(quoted citation omitted). "A plaintiff need not have acted in bad faith, but the district court must find that the plaintiff 'acted intentionally as opposed to accidently or involuntarily.'"*Arnold*, 627 F.3d at 722 (quoting *Hunt v. City of Minneapolis*, 203 F.3d 524, 527 (8th Cir. 2000)); *see also Hutchins*, 116 F.3d at 1260. Consideration of dismissal under Rule 41(b) normally should be separate from the determination of imposing sanctions under Rule 37. *Sentis Group*, 559 F.3d at 899 (quoting *Societe Internationale*, 357 U.S. at 207).

Finally, it is noted that, "[w]hen a litigant's conduct abuses the judicial process, dismissal of a lawsuit is a remedy within the inherent power of the court." *Martin*, 251 F.3d at 694 (citing *Pope v. Federal Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992)); *see also Keefer*, 238 F.3d at 941; *Carey*, 186 F.3d at 1022 (quoting *Pope*). Federal "courts have discretion to employ sanctions in order 'to prevent undue delays in the disposition of pending cases and to avoid congestion on the calendars of the District Court.'" *Lorin Corp.*, 700 F.2d at 1208 (quoting *Link v. Wabash Railroad Co.*, 370 U.S. 626, 629-30, 82 S.Ct. 1386, 8 L.E.2d 734 (1962)). As explained by the Supreme Court, "[t]he authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link*, 370 U.S. at 630-31. The "'court should weigh its need to advance its burdened docket against the consequence of irrevocably extinguishing the litigant's claim and consider whether a less severe sanction could remedy the effect of the litigant's transgressions on the court and the resulting prejudice to the opposing party.'" *Hunt*, 203 F.3d at 527 (quoting *Hutchins*, 116 F.3d at 1260).

## IV. RECOMMENDATION

Based on the historical record and unique circumstances of this litigation, this magistrate judge finds sufficient grounds exist for the dismissal of this action under Federal Rule of Civil Procedure 37(b), Federal Rule of Civil Procedure 41(b), and this court's inherent power.

Beginning with Rule 37(b), plaintiff New Covenant Full Gospel Baptist Church of Muscatine, through its representatives and counsel, failed to timely serve initial disclosures and respond to discovery requests, then failed to fully and timely comply with the court's subsequent orders to produce complete and verified answers to interrogatories, despite being given numerous opportunities to comply. On November 1, 2011, the court ordered New Covenant to "provide defendant with its initial disclosures and complete answers and responsive documents to the discovery requests by no later than November 12, 2011." (Order (Document No. 21) p. 1.) On December 19, 2011, the court ordered the parties to "exchange all outstanding discovery, including but not limited to answers and supplemental answers to interrogatories." (Order (Document No. 31) p. 2.) On February 1, 2012, the court ordered New Covenant to "serve upon defendant a full and complete set of verified answers to interrogatories." (Order (Document No. 33) p. 1.)

As of the present date, nearly two and a half years after the filing of the Complaint, and over a year and a half since the discovery requests were served, New Covenant still has not produced complete, accurate and verified answers to the City's interrogatories. The unverified answers which were produced by New Covenant contain admitted inaccuracies which discredit those discovery responses in their entirety and, in this judge's opinion, amount to a complete failure to respond and perhaps perjury, if ever verified. Certain inaccuracies led to the unnecessary and wasteful depositions of two individuals and to the inability of the sheriff's office to serve Pastors Howard and Carol Hughes with a subpoena to appear for depositions.

The defendant City of Muscatine has been prejudiced by these discovery failures and inaccuracies in unnecessary time and expenditures in pursuing the discovery, and bringing the matter to the court, plus significant delay in proceeding this case to trial and final resolution. The court considered and repeatedly attempted a less severe sanction by "staying further proceedings until the order is obeyed" which has proven futile. *See* Fed. R. Civ. P. 37(b)(2)(A)(iv). There is absolutely no assurance, or even expectation, that the discovery failures will ever be cured by New Covenant, which would unfairly force the City to proceed to the merits of the case without basic, necessary information it is entitled to under the Rules of Civil Procedure.

New Covenant's attempt, through its representatives, to place the sole fault for the discovery shortcomings at the feet of its former counsel, and avoid dismissal of the case, is unavailing. It is a "'well-established principle that a party is responsible for the actions and conduct of his [or her] counsel and that, under appropriate circumstances, dismissal or default may be entered against a party as a result of counsel's actions.'" *Everyday Learning Corp.*, 242 F.3d at 817 (quoting *Boogaerts*, 961 F.2d at 768 (quoting *Denton*, 564 F.2d at 241)). As further explained by the Eighth Circuit,

> it is of no consequence that the discovery abuse perpetrated was by counsel rather than the plaintiff-client. A litigant chooses counsel at his peril. Counsel's disregard of his professional responsibilities can lead to extinction of his client's claims.

*Boogaerts*, 961 F.2d at 768; *see Siems v. City of Minneapolis*, 560 F.3d 824, 826-27 (8th Cir. 2009)(rejecting argument that dismissal under Rule 41(b) was not warranted because plaintiff "was not responsible for, and did not know of, his counsel's dilatory conduct"; affirming

dismissal due to failure to comply with pretrial orders); *Rodgers*, 135 F.3d at 1220 (plaintiff

"is generally bound by the actions (or inaction) of his attorney"; affirming dismissal of action

under 41(b)); *Inman v. American Home Furniture Placement, Inc.*, 120 F.3d 117, 118-19 (8th

Cir. 1997)(rejecting defendants' argument that their inaction was due solely to counsel's

negligence; affirming default judgment); *Comiskey*, 989 F.2d at 1010 (quoting *Boogaerts*;

rejecting defendant's argument that failure to comply with discovery requests and to obey

court orders was sole fault of prior counsel; affirming default judgment as discovery

sanction).

In addition, there is sufficient evidence in the record to conclude that the

representatives of New Covenant themselves, specifically Pastors Howard and Carol Hughes,

are in fact responsible to some extent for the failure to timely and fully complete discovery

as ordered by the court. According to the statements of New Covenant's first attorney in this

action, Howard Hughes revoked the authorization for an inspection of the property and

"refused to cooperate with the prosecution of the action . . . by not assisting with preparing

responses to Defendant's discovery requests." (Motion for Leave to Withdraw as Plaintiff's

Counsel (Document No. 10) ¶¶ 5, 7.) This judge finds Mr. Erbe's statements to be credible

and should be accepted as fact.

Moreover, Howard Hughes himself acknowledged receipt of the interrogatories and

admitted to the inaccuracies in the answers initially provided to the City and the subsequent

failure to verify complete and accurate answers after being ordered to do so by the court. At

a minimum, the failure to comply with this court's orders, and the production of inaccurate

responses, was a combination of the actions, or inaction, of both Pastor Hughes and New Covenant's counsel, Mr. Wright.

Furthermore, as clearly reflected in the deposition transcripts, Pastors Howard and Carol Hughes deliberately refused to provide substantive answers to simple questions as to the attendance at the church's services. The following testimony of Howard Hughes reflects a willful disregard for the discovery process:

Q.     What was your average attendance in 2008? How many people were you typically seeing at church?

A.     Anybody that wanted to come and join us.

Q.     I understand, but what was your average attendance?

A.     Everybody or anybody that wanted to come and join us.

Q.     I'm talking numbers.

A.     I'm talking my answer.

Q.     My question is, what was your average attendance as far as numbers? Your best knowledge.

A.     My best answer is what I gave you.

Q.     And that's what number?

A.     We need to move on.

Q.     I would like an answer to my question.

A.     I've given you an answer.

* * *

Q.     . . . I'm looking for your best estimate. If you're standing there, you can tell whether it's a hundred people or if it's just a dozen people. I'm just wanting your best estimate.

-22-

A.      The scripture says, Where two or three are gathered in my name, there am I in their midst.  We were having church.  The finding from the review board was that, indeed, we were having church.  Their finding is we were having church.  I think that's where you're going with this.  We were having church.  Sufficient.  Let's move on.

* * *

Q.      Were you there in 2008 conducting services?

A.      Yes, I was.

Q.      And what was your attendance numberwise when you were there?

A.      I don't recall.

Q.      Did anybody show up?  Did anybody show up at any of the services you preached at?

A.      (No response.)

Q.      Do you know or not know?

A.      Let's move on.

Q.      So what's your answer? Are you refusing to answer?

A.      You're not asking a question.  I've given you an answer to that question that you're asking several times.  Let's move on.

(Howard Hughes Dep. Tr. (Ex. A to Document No. 49) pp.101-04.)  Similarly, Carol Hughes

flatly refused to answer a simple question as to attendance:

Q.      And these services at the Clarion Hotel, are they held every Sunday?

A.      Yes.

Q.      And what kind of numbers are you getting for attendance at these services?

A.      I'd prefer not to answer that.

Q.      And why not?

A.     Because I just refuse to answer it.

Q.     You don't know?

A.     I refuse to answer.

(Carol Hughes Dep. Tr. (Ex. D to Document No. 49) pp. 7-8.)

The record, when viewed as a whole, establishes a pattern of willful and deliberate conduct by the representatives of New Covenant which resulted in violation of the court's orders compelling the production of discovery, caused significant delay in the discovery process which still remains uncompleted, and impaired the City's ability to proceed on the merits either by motion or at trial. New Covenant's representatives have been given ample opportunity and time to explain and cure the discovery failures, but have failed to sufficiently do so and, instead, attempt to place all responsibility upon counsel. In light of this conduct, the sanction of dismissal under Rule 37(b)(2)(A)(v) is appropriate. Any lesser sanction at this point would involve further delay and, in this judge's opinion, likely be futile and unfairly force the City to proceed without completing discovery.

Dismissal of this case is also warranted, independently, under Rule 41(b) and this court's inherent power due to New Covenant's failure to prosecute its claims and its representatives' abuse of judicial process. The overriding deterrent to the timely prosecution of this case has been the willful and deliberate acts of the representatives of New Covenant which led to repeated conflicts with their retained attorneys and subsequent requests to withdraw as counsel. The inability of those representatives to maintain sustainable relationships with counsel has resulted in a persistent pattern of undue delay which has unfairly prejudiced the City and wasted judicial time and resources.

Again, there is absolutely no assurance, or even expectation, that the representatives of New Covenant will ever be able to maintain a viable relationship with counsel which would ensure that the case proceed to resolution. This magistrate judge attempted to allow ample opportunity and time, considered less severe alternatives, and provided sufficient warning in order for New Covenant to avoid dismissal and proceed with its claims. There is no doubt at this stage, however, that lesser sanctions would be futile and it would be a complete waste of judicial resources and unfairly prejudicial to the City of Muscatine to allow this case to remain on the docket.

However, in the interest of justice, this magistrate judge believes, and recommends, that the dismissal of this case be without prejudice. As noted above, the primary cause in the repeated delay of this case is the inability of New Covenant to maintain a productive and viable relationship with counsel. It is further noted, as indicated by Pastor Hughes himself, that he is not the sole representative of New Covenant. Therefore, this judge believes all representatives of New Covenant, who have not been fully identified to the court, be given an opportunity to assess the history of this action as stated herein, retain new counsel, and continue to pursue their claims if able.

Finally, pursuant to Rule 37(b)(2)(C), New Covenant must pay the reasonable expenses, including attorney's fees, caused by its discovery failures, unless those failures were "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). In this magistrate judge's opinion, the fees and expenses requested by the City for the total amount of $7,210.87 are reasonable and were caused by the discovery failures of New Covenant. While this judge finds no basis to conclude the

discovery failures were substantially justified, there are unique circumstances which, in this judge's opinion, makes the award of expenses at this time premature. Primarily, it is noted that New Covenant is a non-profit corporation which may have limited financial resources to proceed in litigation even without the imposition of sanctions. As a result, in the interest of justice, this judge believes New Covenant should not be required to pay those fees and expenses unless, and until, it retains counsel fully dedicated to proceed with its claims and willing to file a new action on its behalf.

**IT IS THEREFORE RECOMMENDED** that Defendant's Renewed Motion to Dismiss (Document No. 24) be granted to the extent this case be dismissed without prejudice and monetary sanctions be held in abeyance until, and if, New Covenant Full Gospel Baptist Church of Muscatine files a new action against the City of Muscatine.

It is also recommended that the Motions to Withdraw as Counsel for Plaintiff (Document Nos. 55, 57 & 58) filed by Eric D. Puryear and Tomas J. Rodriquez be granted and, pursuant to Local Rule 83.1(d)(5), those attorneys be relieved of any further duties to either plaintiff or the court in this action.

**IT IS ORDERED** that, pursuant to 28 U.S.C. § 636(b)(1), the parties have to and including **October 9, 2012,** in which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained. *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990). Such extensions will be freely granted. Any objections must specify the specific portions of this Report and Recommendation to which objections are made, and set forth the basis for such objections. *See* Fed. R. Civ. P. 72.

Failure to timely file objections may constitute a waiver of a party's right to appeal questions of fact. *Thompson*, 897 F.2d at 357.

Dated September 13, 2012.

_____
THOMAS J. SHIELDS
CHIEF U.S. MAGISTRATE JUDGE